Hon. John Van Lindt Chairman New York State Racing and Wagering Board
Your counsel has asked whether an organization which is licensed to conduct games of chance under Article 9A of the General Municipal Law may bar admission of the general public from those games.
The Legislature enacted the Games of Chance Licensing Law in 1976 in order to implement the 1975 constitutional amendment which provided that municipalities could authorize games of chance (NY Const, Art I, §9[2]; L 1976, ch 960 [General Municipal Law, Art 9A]). The constitutional amendment made games of chance an exception to the general prohibition against gambling. In authorizing this exception, the people of the State of New York enjoined the Legislature to "ensure that such games are rigidly regulated to prevent commercialized gambling, prevent participation by criminal and other undesirable elements and the diversion of funds from the purposes authorized hereunder." Accordingly, the Legislature in its original enactment and in subsequent amendments has stressed the necessity for rigid regulation of games of chance. Section 185, which sets forth the statement of purpose, provides in pertinent part that:
 "* * * all phases of the supervision, licensing and regulation of games of chance and of the conduct of games of chance, should be closely controlled and that the laws and regulations pertaining thereto should be strictly construed and rigidly enforced * * *."
The Games of Chance Licensing Law was enacted to foster and support the raising of funds for bona fide charitable, educational, scientific, health, religious and patriotic causes (ibid.). Only authorized organizations may apply for licenses to conduct games of chance (§ 190).
The term "authorized organization" is defined as any bona fide religious, charitable, educational, fraternal, service, veterans or volunteer firemen organization which has among its dominant purposes one or more of the lawful purposes defined in Article 9A, operates without profit to its members, and has been engaged in a lawful purpose for three years prior to applying for a license (§ 186 [4]). "Lawful purposes" are defined to include causes, deeds or activities which:
 "(a) * * * benefit needy or deserving persons indefinite in number by enhancing their opportunity for religious or educational advancement, by relieving them from disease, suffering or distress, or by contributing to their physical wellbeing, by assisting them in establishing themselves in life as worthy and useful citizens, or by increasing their comprehension of and devotion to the principles upon which this nation is founded and enhancing their loyalty to their governments.
 "(b) * * * initiate, perform or foster worthy public works or shall enable or further the erection or maintenance of public structures.
 "(c) * * * otherwise lessen the burdens borne by government or which are voluntarily undertaken by an authorized organization to augment or supplement services which government would normally render to the people." (§ 186 [5].)
Among the many restrictions upon the conduct of games of chance is the requirement that "[t]he entire net proceeds of any game of chance shall be exclusively devoted to the lawful purposes of the organization permitted to conduct the same" (§ 189 [4]).
The question raised is whether a licensed authorized organization may bar admission of the general public from games of chance. Neither the statute nor the legislative history specifically addresses this issue.
Even though the Games of Chance Licensing Law does not specifically require authorized organizations to admit the general public to games of chance, requiring the general public to be admitted appears to be consistent with the legislative intent. Requiring admission of the general public will ensure the greatest number of participants in games of chance and will thus foster the statutory purpose of raising funds for worthy purposes. Since games of chance have been allowed as an exception to the general prohibition against gambling in order to afford authorized organizations an opportunity to raise funds, it seems fair to ensure public access to these events. Moreover, authorized organizations may be more likely to view the funds raised from games of chance as "public trust funds" (cf. Matter of Disabled American Veterans v State BingoControl Commission, 41 Misc.2d 206 [Sup Ct, Onondaga Co, 1963]) if the general public is permitted to attend.
Your board has the responsibility of supervising the administration of the Games of Chance Licensing Law and has been granted the power to adopt regulations which "shall have the force and effect of law" (§ 188-a [1]). In particular, your board has the power to "adopt, amend and repeal rules and regulations governing the issuance and amendment of licenses thereunder and the conducting of games under such licenses, which rules and regulations * * * shall be binding upon all municipalities issuing licenses, and upon licensees of the board * * *" (ibid.).
We are of the opinion that your board has the authority to adopt a regulation that would require licensed organizations to admit the general public. Since your board is charged by law with the administration of the statute in question, its interpretation, if not unreasonable, would be entitled to great weight (Matter of DiMarisco v Ambach, 48 N.Y.2d 576
[1979]).
This raises the question of what to do about licensed organizations that are not permitted to admit the general public. For example, your counsel has indicated that college fraternities that qualify as authorized organizations under the Games of Chance Licensing Law are not permitted to serve alcoholic beverages to anyone other than fraternity members and their guests (see Alcoholic Beverage Control Law, § 106 [8]), and that some internal college regulations prohibit fraternities from entertaining noncollege students.
Section 194 [3] of the Games of Chance Licensing Law provides:
 "Subject to the applicable provisions of the alcoholic beverage control law, beer may be offered for sale during the conduct of games of chance on games of chance premises * * * provided, however, that nothing herein shall be construed to limit the offering for sale of any other alcoholic beverage in areas other than the games of chance premises."
Section 106(6) of the Alcoholic Beverage Control Law, as amended to conform to the Games of Chance Licensing Law, provides:
 "No person licensed to sell alcoholic beverages shall suffer or permit any gambling on the licensed premises, or suffer or permit such premises, to become disorderly. The use of the licensed premises or any part thereof, for the sale of lottery tickets, playing of bingo or games of chance, when duly authorized and lawfully conducted thereon, shall not constitute gambling within the meaning of this subdivision."
However, section 106 (8) of the Alcoholic Beverage Control Law provides:
 "A club or a luncheon club licensed to sell alcoholic beverages for on-premises consumption shall be permitted to sell such beverages only to its members and to their guests accompanying them."
Since section 194(3) of the Games of Chance Licensing Law permits the sale of alcohol at games of chance "subject to the applicable provisions of the alcoholic beverage control law", we are of the opinion that section 106(8) of the Alcoholic Beverage Control Law is applicable even when authorized organizations are conducting games of chance.
As we have stated, your board has the authority to adopt a regulation which addresses the issue of public access to games of chance. If your board decides generally to require public access to games of chance, it would be appropriate to provide for reasonable exceptions in the case of authorized organizations that are not permitted to admit the general public.
We conclude that the legislative purpose of the Games of Chance Licensing Law to foster fund raising for worthy purposes would be furthered by requiring that authorized organizations admit the general public to games of chance. Accordingly, the State Racing and Wagering Board may adopt a regulation requiring licensees to admit the general public. We do not conclude, however, that under all circumstances the general public must be permitted to participate in games of chance.